| | |
|---|---|
| | HONORABLE RONALD B. LEIGHTON |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JUDY GRIFFITH PAPINEAU, Individually and as Personal Representative of the Estate of Brooks Papineau,<br><br>Plaintiff,<br><br>v.<br><br>HANNAH HEILMAN; CITY OF TACOMA; TIM KOBEL; JOHN DOES 1-5; PIERCE COUNTY, WASHINGTON,<br><br>Defendants. | CASE NO. 3:12-cv-05256 RBL<br><br>ORDER GRANTING MOTION TO DISMISS IN PART AND GRANTING MOTION TO AMEND<br><br><br>[Dkt. # 13, 28] |

THIS MATTER is before the Court on Defendant Pierce County's Motion to Dismiss [Dkt. #13], and Plaintiff's Motion for Leave to File a Second Amended Complaint [Dkt. #28]. The case arises from the death of Plaintiff's husband, Brooks Papineau, and from the County's subsequent search and seizure of his vehicle. For the reasons that follow, the Motion to Dismiss is granted in part and the Motion to Amend is granted.

## I. FACTUAL SUMMARY

On June 15, 2011, Tacoma Police Officer Hannah Heilman stopped Mr. Papineau on suspicion of driving while intoxicated. While Officer Heilman sat in her patrol car requesting backup for processing Mr. Papineau, he exited his truck. Officer Heilman apparently claimed that Mr. Papineau shot at her as he walked toward her car, although the question of Mr. Papineau's actions is disputed. It is undisputed, however, that Officer Heilman fired several shots at Mr. Papineau and that he died shortly after arriving at St. Anthony's Hospital in Gig Harbor.

Following the shooting, Pierce County Detective Mark Merod applied for a warrant to search Mr. Papineau's truck and its contents. The warrant application stated that Mr. Papineau exited the vehicle holding a handgun and that he fired at Officer Heilman. It also stated that the handgun was lying next to Mr. Papineau when other officers arrived.

The magistrate judge issued a search warrant for Mr. Papineau's truck, including "indicia of occupancy, identification, paperwork, papers, mail, bills, or other documents" to determine "dominion and/or control" of the truck, and trace evidence of "the suspect and/or victim of the alleged crime" in the truck. Mot. to Dismiss, App. at 4. The officers found a Koran, a knife, a handgun, and other miscellaneous items inside the truck. They seized the truck and its contents.

In contrast to Officer Heilman's account, the Complaint alleges that Mr. Papineau exited his truck, unarmed and carrying his wallet, to speak with the officer when she shot him multiple times without warning. Mrs. Papineau also alleges that Mr. Papineau had a handgun in his truck, but that he was not holding it when Officer Heilman shot him. Further, following the truck's seizure, Mrs. Papineau alleges that the officers left the vehicle in an uncovered area with the windows partly open, resulting in weather and mold damage. Mrs. Papineau claims she

requested release of the truck and the other seized items. In response, the City asked the County not to release the truck and its contents so that the City could continue its investigation.

Mrs. Papineau has sued Officer Heilman and the City for unreasonably seizing her husband and for depriving her of her relationship with her husband. She also alleges that the City and the County violated her fourth- and fourteenth-amendment rights by unreasonably searching, seizing, and damaging the truck and its contents. She seeks damages from the County under 42 U.S.C. § 1983, declaratory and injunctive relief requiring the County to release her seized property, and reasonable costs and attorney's fees. The County seeks dismissal of Plaintiff's claims against it for failure to state a claim under Fed. R Civ. P. 12(b)(6).

Mrs. Papineau has also moved to file a second Amended Complaint in order to add state-law claims. Pl.'s Mot. for Leave to File Second Am. Compl. [Dkt. #28]. The second Amended Complaint includes claims for assault and battery, infliction of emotional distress, defamation, conversion, and negligence. *Id.* ¶¶ 5.3, 5.5–5.8.

## II. DISCUSSION

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the Court must accept as true a complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *Vasquez v. L.A. Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State*

*Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

As an initial matter, on April 30, 2012, Magistrate Judge Creatura ordered that all property belonging to Mr. Papineau's estate be immediately placed into Mrs. Papineau's custody. Order on Defs.' Mot. for Protective Order [Dkt. # 22]. The items included the truck, the gun, and other personal effects. The court ordered that other evidence not belonging to Mr. or Mrs. Papineau remain in the County's custody. Mrs. Papineau's request for injunctive relief (and the County's motion to dismiss the claim for declaratory and injunctive relief) is therefore moot. *See also* Pl.'s Mot. to Amend at 8 (removing request for declarative and injunctive relief). Accordingly, the Court will address only the constitutional claims against the County.

**A.  Municipal Liability**

Mrs. Papineau asserts 42 U.S.C. § 1983 claims, alleging that the County's officers unreasonably seized and damaged her property, which was the "proximate and foreseeable result of the policies, customs and usages" of the County. Am. Compl. at 4 [Dkt. #5].

To set forth a claim against a municipality under § 1983, a plaintiff must show that the defendant's employees or agents acted pursuant to an official custom, pattern, or policy that violates the plaintiff's civil rights; or that the entity ratified the unlawful conduct. *See id.* at 690–91; *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir. 1991). Additionally, a

municipality may be liable for a "policy of inaction" where "such inaction amounts to a failure to protect constitutional rights." *Lee v. City of Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2000) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). Municipal liability for inaction attaches only where the policy amounts to "deliberate indifference." *Id.* The custom or policy of inaction, however, "must be the result of a conscious or deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* (citations and internal punctuation omitted). Thus, to impose liability on a local government entity for failing to act to preserve constitutional rights, a § 1983 plaintiff must allege that: (1) a municipality or its employee deprived plaintiffs of a constitutional right; (2) the municipality has customs or policies that amount to deliberate indifference; and (3) those customs or policies were the "moving force" behind the constitutional right violation. *Id*. at 681–82.

A municipality is not liable simply because it employs a tortfeasor. *Monell*, 436 U.S. at 691. A municipality may not be held liable for the torts of its employees unless they were acting pursuant to an official policy or longstanding custom or practice. *Botello v. Gammich*, 413 F.3d 971, 978–79 (9th Cir. 2005) (citing *Monell*, 436 U.S. at 691; *Brown*, 520 U.S. at 403; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986); and *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003)).

### 1. County Liability for Damages to Vehicle

"The due process clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). Indeed, the Supreme Court has held that "the Fourteenth Amendment is not a font of tort

law to be superimposed upon whatever systems may already be administered by the States." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) (citation omitted).

Here, Mrs. Papineau attempts to transform a negligence claim—the officers leaving the car windows rolled down—into a constitutional one. But, as noted above, a municipality is liable for a "policy of inaction" where the failure constitutes "deliberate indifference" to constitutional rights. An officer's single act of failing to roll up a truck's windows cannot amount to a "policy of inaction." Thus, to the extent that Mrs. Papineau's constitutional claims are based on the truck's alleged weather and mold damage, the claim is dismissed with prejudice.

### 2. County Liability for Unreasonable Seizure of the Vehicle by Judicial Deception

The Complaint states that Detective Merod repeated Officer Heilman's allegedly false account of the shooting and added his own false statement, i.e., that Mr. Papineau's gun was found outside rather than inside the vehicle. Am. Compl. ¶¶ 3.9–3.10. These false statements, according to Mrs. Papineau, render the resulting warrant invalid and the seizure of the truck and its contents unreasonable under the Fourth Amendment.

"Government investigators may be liable for violating the Fourth Amendment when they submit false and material information in a warrant affidavit." *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002) (citations omitted). Thus, a plaintiff "must show that the investigator 'made deliberately false statements or recklessly disregarded the truth in the affidavit' and that the falsifications were 'material' to the finding of probable cause." *Id.* (citing *Hervey v. Estes*, 65 F.3d 784, 790 (9th Cir. 1995)); *see also Garcia v. Cnty. of Merced*, 639 F.3d 1206, 1212 (9th Cir. 2011) (noting that a plaintiff must establish both a "showing of deliberate falsehood or reckless disregard" and "establish that, without the dishonesty included or omitted information, the magistrate would not have issued the warrant") (citation omitted)).

Until recently, the Ninth Circuit required plaintiffs asserting § 1983 claims against local governments "to set forth no more than a bare allegation that government officials' conduct conformed to some unidentified government policy or custom." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (citing *Shah v. Cnty. of Los Angeles*, 797 F.2d 743, 747 (9th Cir. 1986); *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007)). But, in both *AE ex rel. Hernandez* and *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), the Ninth Circuit applied the *Iqbal-Twombly* pleading standard and disavowed the "bare allegation" standard for civil-rights plaintiffs. Now a plaintiff asserting municipal liability must plead "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself" as well as "factual allegations that . . . plausibly suggest an entitlement to relief . . . ." *AE ex rel. Hernandez*, 666 F.3d at 637 (quoting *Starr*, 652 F.3d at 1216). *Starr* illustrates the types of factual allegations sufficient to sustain a § 1983 claim. There, an inmate alleged that sheriff's deputies had been complicit in an attack against him by other inmates. More importantly, he alleged his injury was part of "numerous incidents in which inmates . . . [had] been killed or injured because of the culpable actions" of the sheriff's deputies, and the sheriff "was given notice" of the incidents, but "did not take action." *Starr*, 652 F.3d at 1216.

In contrast to *Starr*, Plaintiff has not alleged that the County knew of a series of similar prior incidents (e.g., prior false statements made in warrant applications)—or anything comparable. Indeed, Plaintiff has failed to assert any facts suggesting a municipal policy or custom. Thus, the Court must dismiss Plaintiff's constitutional claims against the County to the extent they arise from judicial deception.

### 3. County Liability for Allegedly Exceeding the Scope of the Warrant

Mrs. Papineau asserts that the County exceeded the scope of the warrant by seizing the truck, which was not listed in the warrant as evidence to be seized, but rather a place to be searched. *See* Pl.'s Resp., Appx. 26 [Dkt. #23 at 39].

It appears unlikely that County officers unreasonably impounded the vehicle. In Washington, "a vehicle may lawfully be impounded if authorized by statute or ordinance" or, "[i]n the absence of statute or ordinance, there must be reasonable cause for the impoundment." *United States v. Ruckes*, 586 F.3d 713, 718–19 (9th Cir. 2009) (quoting *State v. Bales*, 15 Wn. App. 834 (1976)). "An officer may 'take custody of a vehicle, at his or her discretion' if it is 'unattended upon a highway where the vehicle constitutes an obstruction to traffic or jeopardizes public safety.'" *Ruckes*, 586 F.3d at 719 (quoting RCW § 46.55.113(2)(b)). Thus, there is little question that the County had authority to initially impound the vehicle.

The relevant question is whether the County had authority to retain the vehicle after impoundment when the search warrant did not identify the truck as material evidence of a crime. The Complaint asserts that after impounding the vehicle the County refused to return it without a warrant or any other grounds justifying retention. Indeed, the County retained the truck until Judge Creatura ordered its return. *See* Order [Dkt. #22]. Given those allegations, and the minimal briefing presented on the issue, the Court cannot dismiss the claim at this time.

### 4. County Liability for Ratification of Unconstitutional Conduct

Although the Amended Complaint does not appear to assert ratification as a basis for municipal liability, Mrs. Papineau's Response does. Pl.'s Resp. at 6 ("There is no indication any corrective action has been taken with regard to any of these violations, and the County is here actively defending them.").

A municipality "may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004) (citation omitted). The policymaker in question "must have knowledge of the constitutional violation and actually approve of it." *Id.*; *see also Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003), overruled on other grounds by *Brosseau v. Haugen*, 543 U.S. 194 (2004) (a "plaintiff must show that the triggering decision of the product of a conscious, affirmative choice to ratify the conduct in question"). But, a "mere failure to overrule a subordinate's actions, without more is insufficient to support a § 1983 claim." *Id.*

Here, the Complaint names only one County employee: Detective Merod. Mrs. Papineau identifies nothing suggesting that County policymakers made a "conscious, affirmative choice to ratify" any allegedly improper conduct by Merod (i.e., false statements made to support the warrant).

Thus, Mrs. Papineau's constitutional claims against the County, to the extent they rest on ratification, are dismissed.

**B. Request for Leave to Amend**

Mrs. Papineau seeks leave to amend her complaint, adding state-law tort claims and additional factual allegations in support of her claims against the County. The County argues that the defects in the Complaint cannot be cured by amendment.

Under Rule 15, leave to amend shall be granted "freely . . . when justice so requires," and that policy is "to be applied with extreme liberality." Fed. R. Civ. P. 15(a)(2); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citations omitted). The court also considers undue delay, bad faith, dilatory motives, repeated failures to cure deficiencies, futility, undue prejudice, or any other factor it deems important to the calculus. *Foman v. Davis*, 371

U.S. 178, 182 (1962). The most important factor is prejudice. *Eminence Capital*, 316 F.3d at 1052 (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987)). Leave to amend may be denied where the proposed amendment would be futile. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

Leave to amend is granted as to Mrs. Papineau's state-law claims. Regardless of the dismissal of federal claims against the County, the state claims arise from the same facts, and the Court can properly exercise supplemental jurisdiction.

Leave to amend is further granted to amend claims against the County. As this juncture, the Court cannot say that amendment would be futile.

### III. CONCLUSION

The County's Motion to Dismiss is **GRANTED IN PART** and Mrs. Papineau's request for leave to amend is **GRANTED** consistent with this order.

IT IS SO ORDERED.

Dated this 27th day of June, 2012.

Ronald B. Leighton
United States District Judge